UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **Criminal Action No. PX-23-0401** |
| SEAN PAUL HURD, | |
| Defendant. | |

**MEMORANDUM ORDER**

Pending is Defendant Sean Paul Hurd's Motion to dismiss the Indictment for violation of Article IV(e) of the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. app. 2, § 2, art. IV(e).  ECF No. 41.  The Government has responded, and, after a hearing, the Court concludes that Hurd's return to his original place of imprisonment after his initial appearance on his federal Indictment violated the IAD.  Accordingly, for the following reasons, the Court dismisses the Indictment without prejudice.

**I.      Background**

On November 9, 2023, the Government charged Hurd by Indictment with one count of possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g).  ECF No. 1. That day, an arrest warrant issued.  ECF No. 4.  Two months later, the United States Magistrate Judge assigned to this matter set Hurd's initial appearance for March 4, 2024.  ECF No. 5.  At the time, Hurd was serving a sentence of imprisonment arising from a District of Columbia Superior Court violation of parole ("D.C. sentence").  He was confined in the custody of the Bureau of Prisons ("BOP") at FCI Gilmer in Glenville, West Virginia, for the service of his D.C. sentence.  ECF No. 47-4.

To effectuate Hurd's presence for his initial appearance, the Assistant United States Attorney ("AUSA") assigned to the case submitted a "Form USA-475" entitled "Request of United States Attorney for Production of Federal Prisoner In The Custody of The United States." ECF No. 47-4.  The parties agree that this request is not a "writ," and that this request was the only one filed to secure Hurd's appearance.  The request consists of a pre-printed form with blanks to be filled in and boxes to be checked.  It also must be approved by the United States Attorney for the requesting district or a designee.  ECF No. 47-4.  Because its contents remain central to the Court's determination, the Court recites the request in full.  It reads,

> The United States Attorney for the District of Maryland, pursuant to 18 U.S.C. § 3621(d), does hereby request the United States Marshal for the District of Maryland, or any other authorized officer, to produce one Sean Paul Hurd (Register No. 49913-007, DOB 1/04/1996) now confined at the FCI Gilmer, 201 FCI Lane Glenville WV 26352 (Phone 304-626-2500, Fax 304-626-2693) in the custody of the warden or the person there in charge, before the United States District Court for Prosecution at Greenbelt, Maryland at 1:30 p.m. on March 4, 2024, or at any time thereafter as the United States Attorney or Magistrate may direct, so that said person may appear in accordance with law in the case United States v. Sean Paul Hurd, and after said person shall have appeared, to return said person to the aforementioned custody as may be directed by the United States Attorney or a federal Judge or Magistrate.

*Id.*

The Form USA-475 secured Hurd's presence on March 4.  ECF No. 47-4.  At the hearing, the Magistrate Judge noted that Hurd was "serving a sentence" based on a D.C. Superior Court parole revocation, but that Hurd and the Government had agreed for Hurd to remain in federal pretrial detention for this case.  *See* ECF No. 6 (March 4, 2024, Hearing (1:59:46 to end)).  *See also* ECF No. 10 (Order of Detention by Agreement).  No mention was made of the IAD during the hearing, and nothing on the record suggests that Hurd had been advised in open court, as is customary, of the IAD's applicability.

2

Despite Hurd's consent to remain in federal detention, he was returned to FCI Gilmer to serve the remainder of the D.C. sentence.  ECF No. 10.  During this time, the Government and Hurd, through counsel, jointly sought to toll Hurd's right to receive a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7), to afford "additional time for the defense to review discovery and to afford the parties time to pursue pretrial resolutions."  ECF No.  14.  *See also* ECF Nos. 21, 23, 28, 38 (tolling of right to proceed to trial within 70 days from Indictment with consent of Hurd through June 4, 2025).

On March 21, 2025, Hurd rescinded his consent to federal detention and requested a hearing under the Bail Reform Act, 18 U.S.C. § 3142 *et. seq.*  ECF No. 30.  In his supporting memorandum, Hurd alerted the Magistrate Judge that the D.C. sentence had ended, at which point he was taken into federal pretrial detention in this case as of October 2024.  ECF No. 32 at 4.  After a hearing, Hurd was detained.  ECF No. 33.  He next moved to dismiss the Indictment for violations of the IAD.  ECF No. 41.

## II.    Analysis

The IAD is a multistate[1] compact that creates "uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a [member] State to hold a currently imprisoned individual when he has finished serving his sentence so that he may be tried by a different State for a different crime."  *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).  Relevant here, Article IV(e) of the IAD compels that "when a prisoner is taken from state custody into federal custody pursuant to a detainer" to be tried on federal charges, he must be tried prior to being returned to finish serving his state sentence.  *United States v. Bamman,* 737 F.2d 413, 415 (4th Cir. 1984).  *See*

---

[1] "State" under the IAD includes the United States of America and the District of Columbia as separate member sovereigns.  *See* 18 U.S.C. app. 2, § 2, art. II(a) ("As used in this agreement . . . 'State' shall mean a State of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.").

*also United States v. Petersen,* 945 F.3d 144, 149 (4th Cir. 2019) (IAD "generally requires an indicting jurisdiction (here, the federal government) to retain custody, once a detainer is filed, of a prisoner until disposing of the charges."). Known as the "anti-shuttling" provision, Article IV(e) provides that "[i]f trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment . . . such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." 18 U.S.C. app. 2, § 2, art. IV(e). However, where the United States is the charging district, the IAD leaves to the court's discretion whether dismissal will be with or without prejudice. *See id.* § 9(1) ("[I]n a case in which the United States is a receiving State . . . any order of a court dismissing any indictment . . . may be with or without prejudice."). When deciding this question, the Court "shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*

The parties do not dispute that at the time Hurd was brought into this district for his initial appearance, he was serving the D.C. sentence. The District of Columbia and the United States are each member states to the IAD. *See supra*, at 3 n.1. Thus, if the Government obtained Hurd's presence in this Court pursuant to a "detainer," then his immediate return to serve the remainder of the D.C. sentence prior to trial in this case clearly violated Article IV(e) of the IAD. *See Bozeman*, 533 U.S. at 153 (Article IV(e) is "absolute" in that if a prisoner is returned before trial the indictment "'*shall not* be of any further force or effect, and the court *shall* enter an order dismissing the same with prejudice.'") (emphasis in original).

The Government argues that it never filed a "detainer" to secure Hurd's appearance. ECF No. 61 at 15:3–6 (AUSA stating "this has been my case since the beginning, and I did not file a

detainer.  I think I, through the U.S. Attorney, would be the proper authority to request it.").  The Government further explained that usually, it will ask that an outstanding arrest warrant be lodged as a detainer, but the AUSAs did not know if such a request had been made here.  *Id.* at 18:21–19:23.

That said, it is not at all convincing that Hurd's rights under the IAD turn on the Government's use of the term "detainer" when it requests the sending state to produce a defendant to face criminal prosecution.  Nowhere does the IAD define what is meant by a "detainer."  *United States v. Mauro,* 436 U.S. 340, 358–59 (1978).  Further, the legislative history supporting the IAD's enactment endorsed a detainer as any "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction."  H.R. REP. NO. 91–1018, at 2 (1970); S. REP. NO. 91–1356, at 2 (1970); 1970 U.S. CODE CONG. & ADMIN. NEWS, 4864.  Accordingly, even where the document sent to the institution is not technically termed a "detainer," if the document places the institution on "notice" that the defendant is "wanted" to face charges in the receiving district, then the notice may indeed suffice.

The request in this case did just that.  It alerted the "warden or person in charge" at the facility in which Hurd had been serving the D.C. sentence that Hurd's physical presence in this district is "wanted" "for prosecution" on the specific date and time noted, "*or at any time thereafter as the United States Attorney or a federal Judge or Magistrate may direct*."  ECF No. 47-4 (emphasis added).  On its face, nothing limited the force and effect of the request for the duration of the prosecution.  In this important way, the request functioned just as a detainer would.  This Court will treat it as a "detainer," consistent with the remedial purposes of the IAD.  Hurd's return

to serve the D.C. sentence after his initial appearance violated Article IV(e) of the IAD. Thus, dismissal of the Indictment is compelled.

That said, dismissal must be without prejudice. Considering the enumerated factors under the IAD, each support this conclusion. First, this is among the more serious of firearm cases. At the time Hurd was arrested with a loaded .45 caliber firearm in his waistband, he was under separate court supervision, and he had previously been convicted of involuntary manslaughter for having shot another young man. ECF No. 33. In this respect, the Government's interest in prosecuting Hurd for illegal firearm possession is paramount.

Second, the facts and circumstances giving rise to the dismissal reflect that the IAD violation was neither planned nor purposeful. Indeed, at the initial appearance, the parties *consented* to have Hurd remain in federal detention. ECF No. 10. The Government's consent to have Hurd detained in this District—the precise result that the IAD compels as a matter of law—is powerful evidence that the failure to comply with the IAD was not intentional, but certainly inexplicable.

Third, the impact of re-prosecution would be minimal. The case is straightforward. If the Government re-indicts Hurd, the matter will likely be resolved as is currently planned—by bench trial to be accomplished in one day. Nor can the significant delay since Hurd's initial appearance be laid at the Government's feet. After all, Hurd urged this Court to conclude, as it did, that the interests of justice supported a lengthy delay in trial so that Hurd had sufficient time to review discovery and mount a vigorous defense. Any delay caused by the IAD violation, therefore, did not prejudice Hurd, as the delay had been necessary for Hurd to be adequately prepared. For these reasons, dismissal without prejudice is warranted.

### III.    Conclusion

Hurd's return to continue his D.C. sentence after his initial appearance on the Indictment and before trial violated Article IV(e) of the IAD, compelling dismissal of the Indictment, albeit without prejudice.  Accordingly, the Motion to Dismiss at ECF No. 41 is **GRANTED**, and the Indictment at ECF No. 1 is **DISMISSED WITHOUT PREJUDICE**.


Dated: October 27, 2025                                    _____/s/_____

                                                          Paula Xinis
                                                          United States District Judge